**FILED**
February 15, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOSE LUIS VILLARREAL, TDCJ #02233669,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BRYAN COLLIER, TDCJ Executive Director; MICHAEL MACKEY, TDCJ Warden, Dominguez Unit; and DIANA DUFF, TDCJ Directors Review Committee (DRC),<br><br>　　　　Defendants. | § § § § § § § § § § § § § § § § § §　　SA-23-CV-00071-OLG |

## ORDER

Before the Court are *pro se* Plaintiff Jose Luis Villarreal's 42 U.S.C. § 1983 Civil Rights Complaint and the Amended Motion for Summary Judgment filed by Defendants TDCJ Executive Director Bryan Collier, TDCJ Warden Michael Mackey, and Diana Duff of the TDCJ Directors Review Committee (collectively "Defendants"). (Dkt. Nos. 1, 17). Villarreal is proceeding *in forma pauperis*. (Dkt. Nos. 2, 5). Upon review, the Court orders Defendants' Amended Motion for Summary Judgment **GRANTED**. (Dkt. No. 17). The Court further orders Defendants' Motion to Dismiss **DISMISSED WITHOUT PREJUDICE AS MOOT**. (Dkt. No. 10).

### BACKGROUND

According to records from the Texas Department of Criminal Justice ("TDCJ"), Villarreal is currently confined in the Wynne Unit based on his convictions for delivery and possession of a controlled substance. *See* Texas Department of Criminal Justice Inmate Search (last visited

Feb. 14, 2024). While confined in the Wynne Unit, Villarreal filed this § 1983 action against Defendants. (Dkt. No. 1). However, the events forming the basis of this action occurred while Villarreal was incarcerated in TDCJ's Dominguez State Jail facility as well as the Wynne Unit. (Dkt. No. 1, pp. 14, 16). According to Villarreal, Defendants violated his constitutional rights by removing his mother from his visitation list and denying her request for reinstatement. (Dkt. No. 1). Villarreal's mother was removed from his visitation list after authorities suspected she brought synthetic marijuana to Villarreal during a visit. (Dkt. No. 17, Exh. A, p. 2). Suspicion arose when after a visit with his mother Villarreal was found in an impaired state, leading prison officials to believe he was under the influence of drugs or alcohol (Dkt. No. 17, Exh. B, p. 53). Following a search, officials found a green leafy substance in two small ballons hidden on Villarreal's body. (*Id.*). The substance tested positive for synthetic marijuana. (Dkt. No. 17, Exh. C, pp. 5, 6). Following removal of his mother from the visitation list, Villarreal filed grievances, but they were rejected for failure to comply with TDCJ's procedures. (Dkt. No. 17, Exh. A, pp. 3–6). He later appealed to the TDCJ Director's Review Committee ("DRC"), but his appeals were denied. (Dkt. No. 17, E, pp. 3–6). Villarreal's mother passed away on July 2, 2022. (Dkt. No. 1, pp. 21, 22).

After his mother's death, Villarreal filed this § 1983 action against Defendants. (Dkt. No. 1). Therein, Villarreal contends that by removing his mother from the visitation list and refusing to reinstate her Defendants violated his rights under the Eighth Amendment (alleging deliberate indifference resulting in cruel and unusual punishment) and the Fourteenth Amendment (alleging violations of due process).[1] (Dkt. No. 1, p. 4, 6) Villarreal claims he

---

[1] To the extent Villarreal seeks to assert constitutional violations on behalf of his deceased mother, the Court finds he lacks standing. As this Court has recognized, "[p]ersons claiming a deprivation of constitutional rights are

2

suffered "emotional injury" and "irreparable harm," seeking monetary damages and a declaration that his rights were violated. (Dkt. No. 1, p. 7). The Court ordered service upon Defendants, and in response they filed a motion to dismiss. (Dkt. Nos. 8, 10). Upon review of the motion to dismiss, the Court ordered it converted to a motion for summary judgment, advising Defendants of their right to file additional summary judgment evidence or an amended motion for summary judgment. (Dkt. No. 11). Defendants filed an amended motion for summary judgment. (Dkt. No. 17). Villarreal did not file a response to either the converted motion to dismiss or the motion for summary judgment.

## ANALYSIS

### *Standard of Review*

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof

---

required to show a deprivation of their personal rights, as opposed to the rights of others." *Barnes v. Givens*, No. SA-17-CV0-1071-XR, 2020 WL 1957554, at *5 (W.D. Tex. Apr. 22, 2020) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986)). As this Court recognized in *Barnes*, the Supreme Court has held that generally, one may not claim standing to vindicate the constitutional rights of a third party. *Id.* (citing *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)). In other words, a § 1983 plaintiff may bring an action only for the deprivations he suffered. *Id.* (citing *Kennedy v. Dallas Police Dep't*, No. 3:06-CV-0716-G, 2007 WL 30260, at *2 (N.D. Tex. Jan. 5, 2007)). Thus, the Court will not consider any claims by Villarreal brought on behalf of his mother.

on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

However, the usual summary–judgment burden of proof does not apply when a defendant moves for dismissal based on qualified immunity. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018). Although nominally an affirmative defense, when a defendant properly pleads qualified immunity, the burden shifts to the plaintiff to negate the defense by demonstrating the defendant is not entitled to immunity. *Tucker*, 998 F.3d at 173; *Escobar*, 895 F.3d at 393. To negate the defense, a plaintiff must show a violation of an actual constitutional right that was clearly established at the

time of the alleged violation. *Tucker*, 998 F.3d at 173; *see Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmovant." *Darden*, 880 F.3d at 727.

Whether qualified immunity is at issue or not, the Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

### *Application*

In their motion for summary judgment, Defendants contend they are entitled to judgment as a matter of law on numerous bases, including: (1) sovereign immunity; (2) failure to allege Defendants' personal involvement; and (3) qualified immunity. (Dkt. No. 17). Although Defendants allege other bases for summary judgment, the Court finds it necessary to address only these three bases to reach a fair and lawful disposition of this dispute.[2]

A. <u>Sovereign Immunity Under the Eleventh Amendment</u>

The Eleventh Amendment bars suits by private citizens against a state in federal court. *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011); *K.P. v. Leblanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)); *see* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to

---

[2] Defendants also argue they are entitled to summary judgment based on: (1) failure to exhaust administrative remedies; (2) lack of standing; (3) limitations; and (4) failure to satisfy the injury requirement under the Prison Litigation Reform Act. (Dkt. No. 17).

extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Monell*, 436 U.S. at 658, 690 n.55 (1978). The bar of the Eleventh Amendment is in effect when state officials are sued in their official capacities for monetary damages or other retrospective relief. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cory v. White*, 457 U.S. 85, 90, (1982). This is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169 (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

Regarding § 1983 claims, the Supreme Court has held a state is not considered a "person" within the meaning of the statute. *Will*, 491 U.S. at 64. Accordingly, although state officials literally are persons, if sued in their official capacities, they are not deemed "persons" for purposes of § 1983. *Id.* at 71. In other words, a suit against an official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *Id.*; *Brandon*, 469 U.S. at 471. As a suit against the official's office, it is no different from a suit against the state itself. *Will*, 491 U.S. at 71 (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 690 n.55). Thus, § 1983 suits brought against state officials in their official capacities for monetary damages or for retrospective relief are, likewise, barred under the Eleventh Amendment. *See id.*

As TDCJ executive director, TDCJ warden, and TDCJ DRC employee, Defendants are officials of the State of Texas.[3] Thus, as to Villarreal's claims against Defendants in their official

---

[3] Although Villarreal never defines Duff's DRC position, the uncontested summary judgment evidence produced by Defendants establishes she is an employee for TDCJ who acts at the instigation of the DRC; she is not a committee

capacities for monetary damages or other retrospective relief, they are entitled to summary judgment based on sovereign immunity. *See Will*, 491 U.S. at 71; *see also* U.S. CONST. amend. XI.

The Court recognizes the Supreme Court holds state officials are *not* entitled to immunity under the Eleventh Amendment when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity based on an alleged ongoing violation of the federal constitution. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *see Ex parte Young*, 209 U.S. 123 (1908). Here, however, the only relief sought by Villareal is monetary or retrospective. (Dkt. No. 1, pp. 4, 7). As noted above, in addition to monetary relief, Villarreal seeks a declaration that the alleged acts of Defendants violated his civil rights. (*Id.*). The declaratory relief sought by Villarreal is not a request for prospective injunctive relief based on an alleged ongoing constitutional violation. Rather, the declaration sought speaks to past acts only. Accordingly, the Court finds that in their official capacities, Defendants are entitled to summary judgment as to Villarreal's request for declaratory relief as well as his request for monetary relief.

### B. *Absence of Personal Involvement*

As to their individual liability, Defendants contend Villarreal's claims fail as a matter of law based on his failure to allege their personal involvement in his § 1983 claims. (Dkt. No. 17). To state a § 1983 claim against a defendant, a plaintiff must allege the defendant was either: (1) personally involved in the actions complained of—the defendant affirmatively participated in the act or acts that caused the constitutional deprivations; or (2) responsible for the policy or custom giving rise to the alleged constitutional deprivation—the defendant implemented the unconstitutional policies or customs that caused the constitutional injury. *Pena v. City of Rio*

---

member who makes decisions regarding visitation appeals. (Dkt. No. 17, Exh. E, pp. 3–6).

*Grande City*, 879 F.3d 613, 620 (5th Cir. 2018); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under § 1983, officials are not vicariously liable for conduct of those under their supervision but are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"). In other words, the doctrine of *respondeat superior* does not apply to § 1983 claims. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 90 F.2d 121, 123 (5th Cir. 1990). Here, Villarreal does not allege the existence of a policy or custom giving rise to his alleged constitutional deprivations. (Dkt. No. 1). Accordingly, he seemingly relies on each Defendant's personal involvement in the alleged deprivations to sustain his § 1983 claims.

Personal involvement, in the absence of allegations relating to responsibility for a relevant policy or custom, is an essential element of an action under § 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). To successfully plead a § 1983 claim, a plaintiff must articulate a set of facts illustrating each defendant's personal involvement in the alleged wrongs. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Generalized allegations or the assertion of legal conclusions are insufficient to satisfy these requirements. *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992). There must be an affirmative link between the alleged constitutional violation and some act by the defendant. *Id.* (citing *Rizzo v. Goods*, 423 U.S. 362, 377 (1976)).

Villarreal has not alleged Defendants were personally involved in removing his mother from his visitation list or refusing to reinstate her. (Dkt. No. 1). Rather, Villarreal seems to rely on Defendants' supervisory positions or positions of authority within TDCJ—executive director, warden, association with the DRC—to impose § 1983 liability. (*Id.*). In his Complaint, Villarreal generally references correspondence to Defendants requesting his mother be placed back on his visitor's list, perhaps suggesting this shows personal involvement by Defendants. (*Id.*). In *Tiede v. Salazar*, this Court found an inmate's allegation that he sent the Sheriff a letter regarding an alleged constitutional violation—even if true—was insufficient to establish personal involvement by the Sheriff. 518 F. Supp.3d 955, 966–67 (W.D. Tex. 2021). At best, allegations of such correspondence establish awareness as opposed to involvement. *See id.*

Villarreal also relies on a letter his mother received from Defendant Duff in response to her request to the DRC that her visitation rights be reinstated. (Dkt. No. 1, p. 16). However, that letter shows only that the DRC reviewed the request and denied it. (*Id.*). Moreover, Defendants' summary judgment evidence shows Duff was not a member of the DRC that decided, on multiple occasions, not to reinstate the mother's visitation privileges. (Dkt. No. 17, Exh. E, pp. 3–6). Villarreal also refers to Defendants' rejection of his grievances over the matter, but the responses to his grievances were not signed by any named Defendants. (*Id.*, pp. 17, 18; Dkt. No. 17, Exh. A, pp. 3–6). In sum, Villarreal provides nothing more than vague and irrelevant references to Defendants' alleged involvement in the purported constitutional violations relating to the removal of his mother from his visitation list and subsequent decisions not to reinstate her visitation privileges. (Dkt. No. 1).

In the absence of the required allegations of personal involvement or responsibility for a policy or custom that was the driving force behind the claimed constitutional violations, the Court finds Villarreal's § 1983 claims fail as a matter of law. *See Pena*, 879 F.3d at 620; *Alderson*, 848 F.3d at 420. Defendants are entitled to summary judgment as to both the Eighth and Fourteenth Amendment claims asserted by Villarreal.

C. *Qualified Immunity*

To the extent it might be argued that Villarreal sufficiently alleged personal involvement by Defendants, Defendants alternatively contend they are entitled to qualified immunity. (Dkt. No. 17). As set out above, a defendant's assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. *Bartlett*, 981 F.3d at 329–30; *Escobar*, 895 F.3d at 393. The plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted). Courts have described qualified immunity as "'an entitlement not to stand trial or face the other burdens of litigation.'" *Staten v. Adams*, 939 F. Supp.2d 715, 723 (S.D. Tex. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 199–200 (2001)), *aff'd*, 615 F. App'x 223 (5th Cir. 2015). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

Once a defendant pleads qualified immunity, the Court must undertake a two–pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff establish or "make out a violation of a

constitutional right." *Darden*, 880 F.3d at 727 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the defendant's actions were objectively reasonable in light of the law that was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013). A Court has discretion to decide the order in which to review the prongs, and a failure by the plaintiff to establish either prong entitles the defendant to qualified immunity. *See Tolan*, 572 U.S. at 656 (citing *Pearson*, 555 U.S. at 236); *Hampton v. Oktibbeha Cnty. Sheriff's Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). The qualified immunity inquiry, even in a summary judgment review, "gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). Importantly, a plaintiff cannot satisfy his burden with conclusory allegations, speculation, or unsubstantiated assertions of wrongdoing. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

*1. Eighth Amendment—Cruel and Unusual Punishment*

Villarreal suggests that by removing his mother from his visitation list and refusing to reinstate her, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. No. 1). For the purposes of this analysis, the Court assumes, without deciding,

that the Eighth Amendment is applicable to a claim based on a denial of visitation privileges such as that alleged by Villarreal.

To establish an Eighth Amendment violation, a prisoner must show a prison official was deliberately indifferent to his health and safety. *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (per curiam) (citing *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013)). To establish deliberate indifference, a prisoner must show defendants (1) were aware of facts from which an inference of an excessive risk to his health or safety could be drawn, and (2) they actually drew an inference that such potential for harm existed. *Id.* Deliberate indifference is an extremely difficult standard to meet. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). Moreover, the standard is based on actual knowledge, not what the prison official allegedly should have known, *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). This means the defendant must have subjectively intended the harm to occur. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 460 (5th Cir. 2001).

Here, Villarreal contends his Eighth Amendment rights were violated because denying him visitation with his mother constituted cruel and unusual punishment, particularly given her failing health. (Dkt. No. 1). However, other than his conclusory references to correspondence to Defendants regarding the visitation issue, Villarreal fails to allege Defendants were aware that the removal of his mother from the visitation list and refusals to reinstate her visitation privileges—even assuming they were personally aware—posed an excessive risk to his health. (*Id.*); *see Rogers*, 709 F.3d at 407. Additionally, it is undisputed that: (1) Villarreal was found with narcotics on his person; and (2) his mother was removed from the visitor's list and denied reinstatement because prison officials determined she smuggled the narcotics into the prison

12

facility during visitation. (Dkt. No. 1, pp. 3, 5; Dkt. No. 17, Exh. B, p. 4; Exh. E, pp. 3–6). Removal of his mother from his visitation list and the refusal to reinstate her was a direct response to a security threat, i.e., the smuggling of narcotics into the prison unit. Accordingly, even assuming personal involvement and knowledge of a risk to Villarreal's mental health by Defendants, it cannot be said the actions in removing the mother from the visitation list and refusing to reinstate her constituted deliberate indifference, i.e., that Defendants subjectively intended to harm Villarreal. *See Thompson*, 245 F.3d at 460. It is paramount to remember that the Eighth Amendment only prohibits cruel and unusual punishment, that is, the unnecessary and wanton infliction of pain. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The actions in removing Villarreal's mother from his visitation list and refusing her reinstatement based on the smuggling incident cannot be said to violate the Eighth Amendment as it was reasonably related to the penological interest in eliminating the introduction of illegal substances into the prison as opposed to an unnecessary and wanton infliction of pain upon Villarreal. *See Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Thus, the Court finds, as argued by Defendants, that the facts alleged by Villarreal do not establish or "make out a violation of a constitutional right." *See Darden*, 880 F.3d at 727. Villarreal has failed to establish the first prong of the qualified immunity inquiry, entitling Defendants to summary judgment. *See id.*

### 2. *Fourteenth Amendment—Due Process*

Villarreal seems to contend that by removing his mother from his visitation list and refusing to reinstate her, Defendants violated his due process rights under the Fourteenth Amendment. (Dkt. No. 1). Defendants contend an inmate does not have a liberty interest in

family visitation and, therefore, Villarreal has failed to make out a constitutional violation, entitling them to summary judgment based on qualified immunity. (Dkt. No. 17).

The Fourteenth Amendment states, in pertinent in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. It protects individuals from the "arbitrary action of government." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)). A court examines due process claims in two steps by asking (1) "whether there exists a liberty or property interest which has been interfered with by the State," and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (quoting *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 571 (1972); *Hewitt v. Helms,* 459 U.S. 460, 472 (1983)). The Supreme Court has held that the types of interests protected by the Fourteenth Amendment are not unlimited, but must rise to more than "an abstract need or desire" and be based on more than "a unilateral hope." *Id.* (quoting *Roth,* 408 U.S. at 577; *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465 (1981)). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* Moreover, liberty interests protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such as unexpected manner as to give rise to protection by the Due Process clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). Although prisoners "do not shed all constitutional rights at the prison gate, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citations omitted).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* Thus, the first question here is whether Villarreal, as a prisoner, has a protected liberty interest in visitation with his mother such that removal of that interest imposed atypical and significant hardship on him in relation to ordinary incidents of prison life. *See id.*

In *Thompson*, the Supreme Court held prison visitation is not an independent right protected under the Fourteenth Amendment, stating "[t]he denial of prison access to particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause. 490 U.S. at 461 (quoting *Hewitt*, 459 U.S. at 468). Likewise, the Fifth Circuit has held inmates do not have a liberty interest protected by the Due Process Clause regarding visitation. *See, e.g., Watkins v. Lnu*, 547 F. App'x 409, 410 (5th Cir. 2013) (holding that district court did not err in concluding prisoner's loss of commissary, visitation, and telephone privileges did not implicate liberty interest protected by Due Process Clause); *Nash v. Wilkinson*, 124 F. App'x 254, 255 (5th Cir. 2005) (holding prisoner has not liberty interest in work assignment, family visits, or house assignment and therefore could not complain about lack of due process in connection with loss of those privileges); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (observing that prisoners have no constitutional right to visitation privileges and restrictions of such privileges do not implicate any due process concerns); *Martin v. Scott*, 156 F.3d 578, 579–80 & n.1 (5th Cir. 1998) (holding that loss of visitation and commissary privileges did not deprive prisoner of constitutionally cognizable liberty interest). In fact, the Fifth Circuit "has repeatedly held that for convicted prisoners "[v]isitation privileges are a matter subject to the discretion of prison

officials." *Berry*, 192 F.3d at 508 (quoting *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975)). And, to the extent Villarreal bases his due process challenge on the disciplinary process that led to the denial of visitation, his claim still fails because the Fifth Circuit has directly addressed the loss of visitation following a disciplinary proceeding the prisoner claimed was not "fair," holding the prisoner had no liberty interest in family visits, among other things. *See Nash*, 124 F. App'x at 255.

In this case, Villarreal's due process claim rests entirely on denial of visitation with his mother. (Dkt. No. 1). Based on the holdings from the Supreme Court and the Fifth Circuit, the Court finds Villarreal has failed to make out a constitutional violation based on his due process claim, failing again to satisfy the first prong of the qualified immunity inquiry, and thereby entitling Defendants to summary judgment. *See Darden*, 880 F.3d at 727.

Moreover, even if it could be argued that Villarreal has some sort of liberty interest in visitation with his mother, the uncontested summary judgment evidence establishes he was afforded due process. He was permitted to contest the removal of his mother from his visitation list through the DRC, which he did on several occasions, though unsuccessfully. (Dkt. No. 17, Exh. E, pp. 3–6).

## CONCLUSION

The Court finds Defendants established as a matter of law that: (1) they are entitled to sovereign immunity in their official capacities for monetary damages or other retrospective relief, the only relief sought by Villarreal; (2) Villarreal failed to allege their personal involvement in his purported constitutional violations; and (3) they are entitled to qualified immunity in their individual capacities because Villarreal failed to make out a constitutional

violation based on either his Eighth or Fourteenth Amendment claims. Accordingly, Defendants are entitled to summary judgment.

**IT THEREFORE ORDERED** that Defendants' Amended Motion for Summary Judgment (Dkt. No. 17) is **GRANTED** and Villarreal's claims against them are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 10) is **DISMISSED WITHOUT PREJUDICE AS MOOT.**

**IT IS FURTHER ORDERED** that Villarreal shall take nothing in this cause against Defendants.

It is **SO ORDERED**.

**SIGNED** this 15 day of February, 2023.

ORLANDO L. GARCIA
United States District Judge